# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **ANGELA CAUDLE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 5:16-CV-0472-MHH** |
| } | |
| **NANCY A. BERRYHILL,**[1] } | |
| **Acting Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Angela Caudle seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Caudle's claims for a period of disability and disability insurance benefits and supplemental security income. For the reasons stated below, the Court affirms the Commissioner's decision.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. *See* Social Security Administration, "The Acting Commissioner of Social Security," available at https.://www.ssa.gov/agency/commissioner.html (last visited September 18, 2017). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

# I.    PROCEDURAL HISTORY

Ms. Caudle applied for a period of disability and disability insurance benefits and supplemental security income on July 30, 2012.  (R. 183, 186).[2]  Ms. Caudle alleges that her disability began December 27, 2010.   (R. 19, 183, 186). The Commissioner initially denied Ms. Caudle's application on November 15, 2012.  (R. 215-219).  Ms. Caudle requested a hearing before an administrative law judge (ALJ).  (R. 222-223).  The ALJ issued an unfavorable decision on July 17, 2014.   (R. 16-29).   On January 19, 2016, the Appeals Council declined Ms. Caudle's request for review (R. 1), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. §§ 405(g) & 1383(c).

Ms. Caudle's July 30, 2012 benefits application is not her first.   On September 10, 2010, she applied for a period of disability and disability insurance benefits and supplemental security income.  In the 2010 application, Ms. Caudle alleged disability beginning on April 26, 2009.  (R. 167).  The Commissioner denied Ms. Caudle's 2010 application on December 30, 2010.  (R. 20, 167).  Ms. Caudle requested and had a hearing before an ALJ on May 2, 2012.  (R. 167).  On May 11, 2012, the ALJ issued an unfavorable decision regarding Ms. Caudle's

---

[2] The administrative record in this case does not appear in CM/ECF.  Therefore, the Court cites to the paper record.

2010 claim.  (R. 167-78).  Ms. Caudle did not appeal the ALJ's May 11, 2012 decision; therefore, the May 11, 2012 decision became final.  (*See* R. 20).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings."  *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Caudle had not engaged in substantial gainful activity since May 12, 2012. (R. 22). The ALJ determined that Ms. Caudle suffers from the following severe impairments: degenerative disc disease of the lumbar spine with spondylosis, major depressive disorder without psychosis,

episodic cannabis abuse in reported remission, and posttraumatic stress disorder. (R. 22). Based on a review of the medical evidence, the ALJ concluded that Ms. Caudle does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22).

In light of Ms. Caudle's impairments, the ALJ evaluated Ms. Caudle's residual functional capacity. The ALJ determined that Ms. Caudle has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes. She can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.

(R. 24). Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Ms. Caudle is able to perform her past relevant work as a housekeeper, a sewing machine operator, and a welding machine operator. (R. 29). Accordingly, the ALJ determined that Ms. Caudle has not been under a disability within the meaning of the Social Security Act. (R. 29). The ALJ also determined that no grounds exist to reopen the May 11, 2012 decision denying Ms. Caudle's previous application for a period of disability and supplemental security income. (R. 20). Accordingly, the ALJ found that res judicata applies through May 11, 2012. (R. 20). Ms. Caudle does not challenge the ALJ's decision not to reopen the May 11, 2012 decision. (*See* Doc. 9).

## IV.   ANALYSIS

Ms. Caudle argues that she is entitled to relief from the ALJ's decision because the ALJ failed to give proper weight to the opinions of three consultative examiners and because the ALJ did not properly evaluate her subjective pain testimony under with the Eleventh Circuit pain standard.  (Doc. 9, pp. 1-2).  The Court considers these arguments in turn.

### A. THE ALJ GAVE PROPER WEIGHT TO THE OPINIONS OF MS. CAUDLE'S EXAMINING PHYSICIANS

Ms. Caudle contends that the ALJ did not properly evaluate and give weight to the opinions of three consultative examiners:  Dr. Belvia W. Matthews, Dr. William D. McDonald, and Dr. Prem K. Gulati.  (Doc. 9, pp. 8-11).  The Court disagrees.

An ALJ is required to consider every medical opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  "'[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'"  *Gaskin v. Comm'r Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (quoting *Winschel*, 631 F.3d at 1179).  Otherwise, a court "cannot determine whether substantial evidence supports the ALJ's decision." *Denomme v. Comm'r, Soc. Sec.*, 518 Fed. Appx. 875, 877 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1179).

Dr. Matthews, Dr. McDonald, and Dr. Gulati each are one-time examiners; therefore, the ALJ need not defer to their opinions. *Crawford*, 363 F.3d at 1160 (holding that, in general, the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)); *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination . . . ."). "An examining physician's opinion is generally given more weight than that of a source who has not examined the claimant." *Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 765 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)). An ALJ may reject an examining physician's opinion and rely on the contrary opinion of a non-examining source when other medical evidence contradicts the examining physician's opinion. *Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.") (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Here, the ALJ did not consider Dr. Matthews's opinion, gave only partial weight to Dr. McDonald's opinion, and gave little weight to Dr. Gulati's opinion.

(R. 28). The Court finds no error in the ALJ's decision not to consider Dr. Matthews's opinion and finds that substantial evidence supports the weight the ALJ gave to Dr. McDonald's and Dr. Gulati's opinions.

1. Dr. Matthews's opinion.

Dr. Matthews, a licensed psychologist, examined Ms. Caudle once on December 23, 2010 in connection with Ms. Caudle's 2010 application for a period of disability and disability insurance benefits and supplemental security income. (R. 431-35; *see also* R. 171). In her July 17, 2014 decision concerning Ms. Caudle's July 30, 2012 application, the ALJ did not mention Dr. Matthews or Dr. Matthews's December 23, 2010 examination and findings.

Generally, an ALJ must consider and assign weight to every medical opinion that appears in the administrative record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion," but the ALJ must "state with particularity the weight he gives to different medical opinions and the reasons why."). As Ms. Caudle argues (*see* Doc. 11, p. 3), opinion evidence that predates an alleged onset date may be relevant to a determination of disability. *See Douglas v. Comm'r of Soc. Sec.*, 486 Fed. Appx. 72, 75 (11th Cir. 2012) (explaining that an ALJ

considered evidence from before and after the alleged onset date "that would have bearing on [the claimant's] disability during the relevant time" in reaching his decision that the claimant was not disabled").

In addition, when evaluating a pending claim for benefits, an ALJ may consider evidence that was part of the administrative record for a prior application without reopening the prior decision and running afoul of the concept of administrative res judicata. *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). "Administrative res judicata applies when the agency has made a 'previous determination or decision . . . about [a claimant's] rights on the same facts and the same issue or issues, and this previous determination or decision [had] become final by either administrative or judicial action.'" *McKinzie v. Comm'r of Soc. Sec.*, 362 Fed. Appx. 71, 73 (11th Cir. 2010) (quoting 20 C.F.R. § 404.957(c)(1)). An ALJ may use evidence contained in a prior administrative record to identify "preliminary facts required to assess rationally the question at issue, *i.e.,* whether [the claimant] was disabled at the time of the second application." *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir. 1986) (stating that ALJ properly summarized medical examinations from 1978, 1979, and 1980 relating to prior application for benefits for purposes of evaluating 1982 application for benefits)

(cited with approval in *Wolfe*).[3]  An ALJ also may examine evidence from a prior administrative record to determine the res judicata effect of the evidence with respect to the latter, pending application.  *Wolfe*, 86 F.3d at 1078-79.  An ALJ crosses the line and reopens a prior administrative decision when the ALJ evaluates the merits of the prior disability determination.  *Wolfe*, 86 F.3d at 1079.

In her July 17, 2014 decision, the ALJ found that "res judicata applies through May 11, 2012" and that "[c]onsideration, therefore, will be given only to whether the claimant may receive benefits by virtue of her current applications." (R. 20).[4]  The Court infers from this statement that the ALJ did not consider Dr. Matthews's opinion because it was part of the administrative record from Ms. Caudle's previous social security application.  Dicta from an unpublished Eleventh Circuit opinion indicates that an ALJ is not required to consider evidence that was part of the administrative record for a previous disability application.  *Luckey v.*

---

[3] *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n. 15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of Mr. Hamlin's case record, and should have been considered by the ALJ."); *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 414 (6th Cir. 2006) ("We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are necessarily irrelevant or automatically barred from consideration by *res judicata*. We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability.") (emphasis in *DeBoard*).

[4] In the next paragraph of her decision, the ALJ identified the relevant time period for Ms. Caudle's current claims as "May 12, 2010, through the date of this decision," rather than as May 12, 2012 through the date of her decision. (R. 20). The Court finds this is most likely a scrivener's error and that the relevant time period for Ms. Caudle's current claims begins on May 12, 2012.

*Astrue*, 331 Fed. Appx. 634, 640 n. 1 (11th Cir. 2007) ("We recognize the force of the argument that the ALJ was not required to consider [Dr.] Oatley's diagnoses because they pertained only to Luckey's previous disability application."). Under the *Luckey* dicta, an ALJ seems to have discretion to decide whether to consider medical evidence that was part of a prior administrative record.[5]

The ALJ's statement regarding res judicata does not address the relevant issue, namely whether she should have considered Dr. Matthews's opinion in determining whether Ms. Caudle was disabled at the time of her second Social Security application. The Court need not resolve the issue because even if res judicata would not preclude the ALJ from examining Dr. Matthews's opinion, the omission from the ALJ's analysis is harmless error. An error is harmless if the correct application of the regulations "would not contradict the ALJ's ultimate findings." *Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005).

Ms. Caudle relies on Dr. Matthews's findings regarding her (Ms. Caudle's) weight loss and sleep disturbance, Dr. Matthews's diagnoses of severe major depression and anxiety, Dr. Matthews's assessed GAF score of 50, and Dr. Matthews's conclusions that Ms. Caudle's prognosis is poor and that she would

---

[5] The Court respectfully observes that the best practice may be for an ALJ to acknowledge medical records or medical opinions that were part of a prior administrative record and explain that the ALJ gave the records and/or opinions no weight -- if that is the ALJ's decision -- because the record was part of a prior administrative record. *See Hamlin*, n. 3 above.

have difficulty obtaining and maintaining a job. (Doc. 11, p. 3).[6] Dr. Matthews's opinion that Ms. Caudle would have difficulty obtaining or maintaining employment constitutes an opinion on an issue reserved for the Commissioner. Therefore, the opinion is not entitled to special weight or deference. *See* 20 C.F.R. §§ 404.1527(d)(3) & 416.927(d)(3). With respect to Dr. Matthews's assigned GAF score of 50, the GAF scale "'does not have a direct correlation to the severity requirements in [the Social Security Administration] mental disorders listings.'" *Nye v. Comm'r of Soc. Sec.*, 524 Fed. Appx. 538, 545 (11th Cir. 2013) (citing 65 Fed. Reg. at 50765-65). The ALJ accounted for Dr. Matthews's diagnoses of severe major depression and anxiety because the ALJ found that Ms. Caudle suffers from severe impairments of major depressive disorder and posttraumatic stress disorder. (R. 22). The ALJ also accounted for Dr. Matthews's findings about Ms. Caudle's mental impairments when, in her RFC assessment, the ALJ limited Ms. Caudle to simple routine tasks requiring short simple instructions, few workplace changes, occasional interactions with co-workers and supervisors, and no interactions with members of the general public. (R. 24).

Accordingly, if the ALJ erred in failing to consider and assign weight to Dr. Matthews's opinion, the error does not require remand because the error is

---

[6] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social and occupational functioning.'" *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 Fed. Appx. 520, 523 n.2 (11th Cir. 2015) (quoting American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994) (DSM-IV)).

harmless. *See Colon v. Colvin*, 660 Fed. Appx. 867, 869 (11th Cir. 2016) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) ("An error is harmless if it does not affect the ALJ's ultimate decision.").

### 2. Dr. McDonald's opinion.

On October 2, 2012, Dr. McDonald performed a new consultative psychological examination in connection with Ms. Caudle's current application for a period of disability and disability insurance benefits and supplemental security income. (R. 505-08). Dr. McDonald, a licensed clinical psychologist, examined Ms. Caudle on October 2, 2012. (R. 505). As the ALJ noted, Ms. Caudle reported to Dr. McDonald that she had "significant symptoms of depression including sadness, anger, frequent crying spells, mood swings, limited interests, and generalized anxiety." (R. 27; *compare* R. 505). Ms. Caudle identified her illness as "severe depression with psychosis," and she viewed herself as disabled "because of her back problems, headaches, poor memory, and bad attitude." (R. 505, 508).

At the time of his examination, Dr. McDonald observed that Ms. Caudle was "cooperative and generally friendly." (R. 506). He also observed that Ms. Caudle was "nicely dressed and well groomed" and that her "speech was normal in content, form, and progression." (R. 506-07). With respect to his mental status examination, Dr. McDonald found that Ms. Caudle had a limited affect and was tearful at times, but Ms. Caudle was "alert and completely oriented." (R. 507). Dr.

McDonald noted that Ms. Caudle's "recent and remote memory appeared grossly intact," although she complained of short-term memory problems. (R. 507). Dr. McDonald also noted that Ms. Caudle's "thinking appeared logical and coherent," with "no evidence of any loose association, tangential, or circumstantial thinking or confusion." (R. 507). Dr. McDonald estimated Ms. Caudle's intelligence to be in "the low average to average range," and he found that her "insight and judgment appear somewhat limited." (R. 507). In his examination, Dr. McDonald found "no evidence of hallucinations or delusions," but he noted that Ms. Caudle reported hearing voices telling her to do things when she is angry. (R. 507).

Based on his examination, Dr. McDonald diagnosed Ms. Caudle with major depression, recurrent, severe, rule out schizoaffective disorder; anxiety disorder, not otherwise specified; and possible personality disorder. (R. 507). He gave Ms. Caudle a GAF rating of 50. (R. 507). Finally, Dr. McDonald opined that Ms. Caudle's "ability to understand, carry out, and remember instructions is considered to be at least mildly impaired," while "[h]er ability to respond appropriately to supervisors, coworkers, and work pressures is severely impaired at this time . . . ." (R. 508).

The ALJ gave partial weight to Dr. McDonald's opinion, and consistent with Dr. McDonald's opinion, the ALJ found that Ms. Caudle had the severe impairment of major depressive disorder without psychosis. (R. 22, 28, 508). The

14

ALJ specifically gave weight to Dr. McDonald's opinion "to the extent it is consistent with" Ms. Caudle's RFC, which limited Ms. Caudle to "perform[ing] routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes" and to "hav[ing] occasional interactions with co-workers and supervisors and no interactions with member of the general public." (R. 24, 28). Based upon Ms. Caudle's RFC, the ALJ gave weight to Dr. McDonald's opinion that Ms. Caudle's ability to understand and carry out instructions is at least mildly impaired, but gave little weight to Dr. McDonald's opinion that Ms. Caudle's ability to respond appropriately to supervisors, coworkers, and work pressure is severely impaired. Substantial evidence supports those decisions.

The ALJ found Dr. McDonald's opinion regarding Ms. Caudle's ability to respond appropriately to supervisors, coworkers, and work pressures unpersuasive "in light of the conservative and intermittent nature of the claimant's mental health treatment since May 2012 . . . ." (R. 28). As the ALJ noted, Ms. Caudle stopped seeing a mental health counselor at the Mental Health Center of Madison County in January 2013 and did not see a counselor or psychiatrist again until April 2014, although Ms. Caudle continued to receive medications from the Center for approximately a year after January 2013. (R. 26, 139-42, 527, 580).

Ms. Caudle argues the ALJ erred by considering the gap in her mental health treatment because her limited income and lack of medical insurance impeded her ability to seek treatment. (Doc. 9, p. 9). The record contradicts this argument. Ms. Caudle testified at her hearing before the ALJ that she stopped treatment at the Mental Health Center in January 2013 because the center assigned her a male psychiatrist who she did not like, not because she could not afford treatment at the center. (R. 139-40). Additionally, Ms. Caudle did not go to an emergency room for any psychiatric issues after she ceased treatment at the Mental Health Center, and she was not hospitalized for psychiatric treatment during the relevant time period. (R. 26, 150-51).[7]

The ALJ also found Dr. McDonald's opinion regarding Ms. Caudle's ability to respond to supervisors and coworkers unpersuasive in light of Ms. Caudle's "reported activities of daily living and the testimony presented at the hearing relative to her daily routine." (R. 28). At her hearing, Ms. Caudle testified that she is able to do routine chores, including cleaning, bathing, and cooking for herself. (R. 119-22). Ms. Caudle also reported that she visits her ten-month old grandson every day, and visits her three-year old granddaughter about three times a week. (R. 123, 137-39). Ms. Caudle also drives to visit her mom about three times a

---

[7] Ms. Caudle sought psychiatric treatment at the Huntsville Hospital emergency department on December 27, 2010, and she received in-patient treatment at the hospital between December 27 and December 29, 2010. (R. 439-63). The ALJ considered evidence relating to Ms. Caudle's December 2010 hospitalization in her May 11, 2012 decision. (R. 172).

week and to the grocery store about once a month. (R. 125-27). Finally, Ms. Caudle reported that she takes care of her two children and does "everything for them." (R. 372). That evidence supports the weight the ALJ gave to Dr. McDonald's opinion and supports the ALJ's determination of Ms. Caudle's RFC.

Ms. Caudle argues that the ALJ did not properly consider the treatment and clinic notes provided by her treating physicians that support Dr. McDonald's opinion. (*See* Doc. 9, p. 10; Doc. 11, p. 6). However, the issue before the Court is not whether there is evidence to support the consultative examiner's opinion but whether substantial evidence supports the ALJ's decision. *See Winschel*, 631 F.3d at 1178.

Ms. Caudle also argues that the ALJ erred by not giving proper consideration to Dr. McDonald's finding that Ms. Caudle had a GAF score of 50, and she asserts that a GAF score of 50 does not support the ALJ's decision that Ms. Caudle is not disabled. (Doc. 9, p. 9). Under the DSM-IV, a GAF score of 41-50 indicates serious symptoms, and a GAF score of 51-60 indicates moderate symptoms. *Lacina*, 606 Fed. Appx. at 527 (quoting DSM-IV at 32). Thus, the ALJ technically erred by stating that a GAF score of 50 "indicates moderate to severe symptomology." (R. 28). Nevertheless, the error is harmless because "the Commissioner has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorder listings.'" *Lacina*, 606 Fed. Appx. at

527 (quoting 65 Fed. Reg. 50,746; 50,764-65). Additionally, Ms. Caudle's testimony regarding her activities and daily routine and the intermittent nature of her psychiatric treatment support the ALJ's decision to give only partial weight to Dr. McDonald's opinion. *See* pp. 11-13, *supra*.

### 2. Dr. Gulati's opinion.

Dr. Gulati, a consultative physician, examined Ms. Caudle on October 31, 2012. (R. 25, 513-15). At the examination, Ms. Caudle reported that she had suffered from neck and back pain since 2002, and she had had headaches for 17 years. (R. 513). Upon examination, Dr. Gulati found "no tenderness in the neck area," and although Ms. Caudle "was tender in the upper thoracic area," Dr. Gulati found no abnormalities with Ms. Caudle's range of motion of the cervical spine. (R. 514). Dr. Gulati found normal range of motion in Ms. Caudle's extremities, except for her right shoulder area, where Ms. Caudle had some tenderness. (R. 514). Dr. Gulati noted that Ms. Caudle started crying during the range of motion exercise "of the right lower extremity even though the range of motion of the extremity appears to be normal." (R. 514).

Dr. Gulati found moderate tenderness in Ms. Caudle's lower lumbar spine. (R. 514). X-rays ordered by Dr. Gulati revealed "degenerative disk disease of L4, L5-S1 with spondylolisthesis of L5-S1 level." (R. 515). During Dr. Gulati's examination, Ms. Caudle "had no difficulty getting on and off the examination

table." (Tr. 514). Ms. Caudle "walked with a limp without an assistive device," and she had "difficulty squatting and rising up and also had difficulty doing heel and toe walk . . . ." (R. 514). Dr. Gulati noted that Ms. Caudle was "alert and oriented," and his neurological findings were normal, except for straight leg raise on the right. (R. 515).

Based upon his examination, Dr. Gulati's impressions were neck pain, cervical radicular pain to the right, degenerative disk disease of lumbosacral spine, spondylolisthesis, lumbar radicular pain to the right, and history of migraine headaches. (R. 515). Dr. Gulati opined that Ms. Caudle "will not be able to do any gainful employment at this time." (R. 515).

The ALJ gave Dr. Gulati's opinion little to no weight in part because it "addresses an issue that is reserved to the Commissioner . . . ." (R. 28). Indeed, a finding that a claimant is "unable to work" is not a medical opinion, but is instead an issue for the Commissioner to decide. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Hutchison v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that an opinion regarding whether a claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ").

The ALJ also explained that she gave Dr. Gulati's opinion little to no weight because Dr. Gulati examined Ms. Caudle only once and "his opinion is entirely inconsistent with [Ms. Caudle's] complete lack of treatment for any medical

condition other than an upper respiratory infection [] during the alleged period of disability and total lack of treatment for anything related to her spine."  (R. 28). The record reveals Ms. Caudle sought treatment for flu-like symptoms at the Huntsville Hospital emergency department on February 27, 2012 (R. 408), but there is no evidence that she sought treatment for any other physical condition, including any problem with her neck or spine, after her alleged onset date of December 27, 2010.  (R. 436-580).

In addition, the ALJ noted that Dr. Gulati "found very few objective abnormalities upon physical examination." (R. 25).  The ALJ recognized the objective abnormalities Dr. Gulati found in his examination of Ms. Caudle by including degenerative disc disease of the lumbar spine with spondylosis as one of Ms. Caudle's severe impairments.  (R. 22, 515).  The ALJ accommodated that impairment by finding that Ms. Caudle is limited to light work.  (R. 24).

Ms. Caudle asserts that the ALJ erred by giving great weight to the opinion of Dr. Robert Estock, a non-examining state agency consultant, in reaching her determination that Ms. Caudle could perform light work.  (Doc. 9, pp. 10-11; Doc. 11, pp. 7-9; *see also* R. 28).  Dr. Estock, whose specialty is psychiatry, completed a psychiatric review and a mental RFC assessment related to Ms. Caudle's claims.

(R. 190-91, 195-97).[8]  The disability determination explanation includes Dr.

Estock's review and assessment and a physical residual functional capacity

assessment signed by Stanley Crawford, a single decision maker ("SDM").  (R.

192-95).  Based on the signature, the SDM, not Dr. Estock, completed the physical

RFC assessment contained in Ms. Caudle's initial disability determination

explanation.  Therefore, the physical RFC assessment is not medical opinion

evidence, though it is still evidence in the record that the ALJ could consider.  *See*

Social Security Program Operations Manual System DI 24510.050(C) ("SDM-

completed forms are not opinion evidence at the appeal levels.").[9]

Ms. Caudle relies upon *Siverio v. Commissioner of Social Security*, 461 Fed.

Appx. 869 (11th Cir. 2012), to argue that the ALJ committed reversible error by

assigning great weight to the opinion of an SDM.  (Doc. 11, p. 8-9).  In *Siverio*, the

ALJ rejected the opinion of the claimant's treating physician and relied upon an

SDM's opinion to find that the claimant could perform medium work even though

no other evidence in the record supported the SDM's opinion.  461 Fed. Appx. at

872.  In other words, in *Siverio*, the only evidence that supported the ALJ's

determination that the claimant could perform medium work was the opinion of the

SDM.  *See id.*  In Ms. Caudle's case, the following evidence in the record besides

---

[8] Dr. Estock's specialty code is 037, which corresponds to psychiatry.  (R. 191, 197-98); *see also*
Social Security Program Operations Manual System DI 24501.004(B), Medical Specialty Codes,
available at https://secure.ssa.gov/poms.nsf/lnx/0424501004 (last visited September 18, 2017).

[9] Available at https://secure.ssa.gov/poms.nsf/lnx/0424510050 (last visited September 18, 2017).

the SDM's opinion supports the ALJ's determination that Ms. Caudle can perform light work: (1) the objective findings in Dr. Gulati's examination, (R. 514-15); (2) Ms. Caudle's lack of medical treatment for any problem with her back or neck, (*see* R. 436-580); (3) Ms. Caudle's testimony that over-the-counter medication helps with her back and neck pain, (R. 112-14); and (4) Ms. Caudle's testimony regarding her activities and daily routine, (R. 119-27).

Thus, substantial evidence supports the ALJ's determination of Ms. Caudle's RFC, and this case is distinguishable from *Siverio*. As a result, the ALJ's reliance on the SDM's opinion was harmless error.

## B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S REJECTION OF MS. CAUDLE'S SUBJECTIVE TESTIMONY

Next, Ms. Caudle argues that the ALJ did not properly evaluate her (Ms. Caudle's) subjective testimony regarding her pain, depression, and anxiety. The Court disagrees.

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Comm'r of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)).

A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225; *see* SSR 16-3P, 2016 WL 1119029 at *9 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").[10]

At her administrative hearing, Ms. Caudle testified that she suffers from depression and anxiety, "cr[ies] all the time," and is upset, angry, and "feel[s] delusional a lot." (R. 99). Ms. Caudle reported that she has suicidal thoughts almost every day and has had hallucinations and thoughts of harming people in her family. (R. 99-100, 102-03, 107-08). However, she acknowledged that medication helps with her depression and anxiety. (R. 101, 105, 109, 111). Ms. Caudle

---

[10]On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints about pain that was in effect when the ALJ issued a decision in this case. 2016 WL 1237954 at *1. SSR 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." 2016 WL 1119029 at * 1. SSR 16-3p eliminates the term "credibility" from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony. *See* 2016 WL 1119029, at *7. SSR 16-3p provides clarification of the subjective pain standard; it does not substantively change the standard. SSR 16-3p does not apply retroactively to cases such as this one. *Green v. Comm'r of Soc. Sec.*, 2017 WL 3187048 at *4 (11th Cir. July 27, 2017).

reported that she has trouble with her memory and concentration, and her ability to stay on task. (R. 132-33). Ms. Caudle also testified that she suffers from constant back and neck pain, along with pain in her legs and shoulders. (R. 113). She takes over-the-counter medication for pain, and the medication "takes the edge off" her pain, which allows her to do what she needs to do. (R. 112-14).

The ALJ accurately summarized Ms. Caudle's testimony concerning her pain and other symptoms. (*See* R. 25). The ALJ applied the correct legal standard when examining Ms. Caudle's subjective complaints. The ALJ explained that Ms. Caudle's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Ms. Caudle's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . ." (R. 25). The ALJ found that Ms. Caudle's limited and conservative treatment history, her hearing testimony regarding her activities and daily routine, and her sporadic work history undermine her testimony concerning the severity of her symptoms. (R. 25-28). The Court already has discussed the evidence concerning Ms. Caudle's limited medical and psychiatric treatment and her activities and daily routine. *See* pp. 15-16, 19, above. Substantial evidence supports the ALJ's rejection of Ms. Caudle's subjective testimony regarding her pain and other symptoms. *See Parks v. Comm'r of Soc. Sec.*, 353 Fed. Appx. 194, 197 (11th Cir. 2009) (per curium) ("The record supports the ALJ's conclusion

because it shows [the claimant] was able to cook, clean, run errands, drive, and attend church weekly. . . . Thus, the ALJ's rejection of [the claimaint's] subjective pain testimony was based on adequate reasons as the effectiveness of [the claimaint's] medication and her ability to perform chores, drive, and attend church are inconsistent with her testimony of debilitating pain."); *Dyer v. Barnhardt*, 395 F.3d 1206, 1209 (11th Cir. 2005) ("[T]he ALJ found [the claimant's] subjective complaints to be inconsistent with [his] activities of daily living," including his ability to "mow the lawn, read, iron, drive, watch television, feed and pet his dog, shop, and perform some 'limited maintenance' household chores.").

## V.    CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 29, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE